ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**11/29/2017** at 01:04:21 PM
Clerk of the Superior Court
By Laurie Moyneur, Deputy Clerk

1 | LAW OFFICES OF ROBERT J. HUSTON III
Robert J. Huston III, SB # 45366
2 | 10 Jetty Drive
Corona del Mar, CA 92625
3 | Tel: (949) 230-0259 Email: bob_huston@yahoo.com

4 | Attorney for Plaintiffs LAURA FARRIS and
ERIC OTTENS
5

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SAN DIEGO**

10

11 | LAURA FARRIS, an individual and ERIC ) **CASE NO.** 37-2017-00045518-CU-NP-NC
OTTENS, an individual,
12 | **COMPLAINT FOR:**
Plaintiffs,
13 | **(1) CONVERSION**
vs.
14 | **(2) AIDING AND ABETTING
CONVERSION**
LUKE D'ANGELO, an individual; STEVE COX, an
15 | individual; APPTECH CORP., a Wyoming
corporation; TRANSFER ONLINE, INC., an **(3) BREACH OF FIDUCIARY DUTY**
16 | Oregon corporation; and DOES 1 through 25,
inclusive, **(4) BREACH OF CONTRACT**
17 |
Defendants. **(5) BREACH OF IMPLIED
COVENANT OF GOOD FAITH
AND FAIR DEALING**
18
19
**(6) DECLARATORY RELIEF**
20
**DEMAND FOR JURY TRIAL**
21

22 | Plaintiffs Laura Farris ("Farris") and Eric Ottens ("Ottens") allege the following:

23 | **I. PARTIES AND VENUE**

24 | 1. At all times mentioned herein, Defendant AppTech Corp. ("AppTech")

25 | conducted business in the County of San Diego and within the jurisdiction of this Court.

26 | It is a Wyoming corporation, registered in California as a foreign corporation doing

27

28 | 1

**COMPLAINT**

1    business as "AppTech Corp. Services".

2        2.    Defendants Luke D'Angelo ("D'Angelo") and Steve Cox ("Cox") are, and at

3    all times mentioned herein were, residents of the County of San Diego and within the

4    jurisdiction of this Court.

5        3.    At all times mentioned herein, Defendants D'Angelo and Cox were officers,

6    directors and shareholders of Defendant AppTech. Currently, Defendant D'Angelo is the

7    Chairman of the AppTech Board of Directors.  Defendant Cox is the former president of

8    Defendant AppTech.

9        4.    At all times mentioned herein, Defendant Transfer Online, Inc. ("Transfer")

10   conducted business in the County of San Diego as a stock transfer agent and within the

11   jurisdiction of this Court.  It is an Oregon corporation, not registered in California as a

12   foreign corporation.

13       5.    Plaintiff Farris has, since May 15, 2013, been a beneficial shareholder of

14   AppTech, and a resident of the State of Hawaii.

15       6.    Plaintiff Ottens has, since May 15, 2013, been a beneficial shareholder of

16   AppTech, and a resident of the State of Texas.

17       7.    The events leading to this action occurred within the County of San Diego

18   and within the jurisdiction of this Court.

19       8.    Plaintiffs are ignorant of the true names and capacities of the defendants

20   sued herein under the fictitious names DOES 1 through 25, inclusive.  Plaintiff will amend

21   this Complaint to allege the true names and capacities of such defendants as soon as such

22   information is ascertained

23       9.    Plaintiff is informed and believes and thereon alleges that each of the

24   defendants sued herein under the fictitious names DOES 1 through 25, inclusive, is

25   responsible in some manner for the occurrences herein alleged, and that Plaintiffs'

26   damages as herein alleged were proximately caused by these defendants. Each reference

27

28                                           2

**COMPLAINT**

in this Complaint to "defendant," "Defendant," "defendants," "Defendants," or any specially named defendant, refers also to all defendants sued herein under such fictitious names.

10.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each defendant, including Defendants D'Angelo, Cox, AppTech and Transfer Online, and all defendants sued herein under the fictitious names of DOES 1 through 25, inclusive, was the agent and/or employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of this agency and/or employment.

## II. FACTUAL ALLEGATIONS

**A.**   **Salient Facts About the Transcendent One / Apptech Merger**

11.   On or about February 1, 2012 Defendant AppTech issued to Plaintiff Ottens its Convertible Promissory Note in the face amount of $50,000 with interest at six percent (6%) per annum (the "Convertible Note") as part of a negotiated settlement of a) accrued unpaid loans and business expenses advanced by Plaintiff Ottens for the benefit of Defendant AppTech; and b) accrued and unpaid consultant fees owed to Plaintiff Ottens by Defendant AppTech per the terms of a consulting agreement between those parties dated October 1, 2011. A true and correct copy of the Convertible Note is attached hereto, marked Exhibit A and incorporated herein by reference.

12.   On March 15, 2013, as amended on April 30, 2013, Defendant AppTech entered into an Agreement and Plan of Merger with Transcendent One Inc., a Nevada corporation, controlled by Defendants D'Angelo and Cox (the "Merger Agreement").

13.   In relevant part the Merger Agreement provided in paragraph 1.3   "In connection with the Reverse Split and Merger, Eric Ottens, an individual residing in Texas ("Ottens"), shall convert fifty thousand dollars ($50,000.00) of his debt (emphasis added) into five million (5,000,000) shares of the common stock of AppTech at a conversion rate of one cent ($0.01) per share, all of which shares of the common stock of App Tech shall

**COMPLAINT**

be restricted pursuant to Rule 144 ("Merger Shares"). Ottens shall assign two million five hundred thousand (2,500,000) Merger Shares to Laura Farris, an individual residing in Hawaii ("Farris"), which will result in both Ottens and Farris holding two million five hundred thousand (2,500,000) Merger Shares. All other remaining debt of AppTech shall be cancelled upon consummation of the Merger. Upon completion of the Merger, the Merger Shares' certificates shall be issued to Ottens and Farris within three (3) business days."

14.     By the terms of paragraphs 1.3(a) and 1.3(b) of the Merger Agreement Plaintiffs' Merger Shares were made subject to the terms and conditions of Lock-Up / Leak-Out Agreements, which prohibited transfers of any kind of transfer of the Merger Shares for a period of six (6) months following the closing of the Merger Agreement, and Right of First Refusal Agreements, with Defendant AppTech.

15.     Paragraph 1.7 of the Merger Agreement provides "Within one hundred and twenty (120) days of the Closing of the Merger, AppTech and its wholly-owned subsidiary, Transcendent, shall complete a certified audit of all books and records of the combined company, which audit shall be completed by a PCAOB firm (the "Audit")." Plaintiffs are informed and believe, and thereupon allege that no such audit was prepared in the specified time frame.

16.     Paragraph 1.8 of the Merger Agreement provides "Upon completion of the Audit, AppTech shall file with the US Securities and Exchange Commission a Form S-1 Registration Statement ("S-1"). The S-1 shall be filed within one hundred eighty (180) days of the Closing of the Merger." Plaintiffs are informed and believe, and thereupon allege that no such S-1 was prepared in the specified time frame or at any time thereafter.

17.     On May 2, 2013 Plaintiff Ottens and Defendant AppTech agreed upon an amendment to the terms of the Convertible Note to reflect the effect of a reverse split of the AppTech common stock and to facilitate the Closing of the Merger Agreement (the "Amendment to Convertible Promissory Note"), a copy of which, together with its enabling

4

**COMPLAINT**

1   resolutions, is attached hereto, marked Exhibit B and incorporated herein by this reference.

2       18.    On or about May 7, 2013, the Merger Agreement closed.  It has not since

3   been rescinded.

4       **B.    Facts Pertinent to the Issuance of the Merger Shares to Plaintiffs**

5       19.    On May 7, 2013, upon receipt of conversion notices from Plaintiffs,

6   Defendant AppTech by way of a Unanimous Written Consent of its new board of directors

7   (the Unanimous Consent"), accepted the conversion notices and ordered its appropriate

8   officers to instruct Defendant Transfer Online to issue 2,500,000 shares of AppTech

9   common stock to Plaintiff Farris and 2,500,000 shares of AppTech common stock to

10  Plaintiff Ottens.  A copy of the Unanimous Consent and its transmittal letter to the transfer

11  agent is attached hereto, marked Exhibit C and incorporated herein by this reference.

12      20.    On May 15, 2013, upon the strength of the written instruction given to it in

13  Exhibit C and a written opinion letter from attorney Michael J. Woodford, Defendant

14  Transfer Online issued five 500,000 share certificates of AppTech common stock to

15  Plaintiff Farris (the "Farris AppTech shares").  Each such certificate contained a single

16  legend, and no other, as follows:

17          "The securities represented by this certificate are subject to the terms and

18          conditions set forth in this LockUp/Leak Out Agreement and the Right of First

19          Refusal Agreement, copies of which may be obtained from the issuer or from

20          the holder of this security. No transfer of such securities will be made on the

21          books of the issuer unless accompanied by evidence of compliance with the

22          terms of such agreement."

23      21.    On May 15, 2013, upon the strength of the written instruction given to it in

24  Exhibit C and a written opinion letter from attorney Michael J. Woodford, Defendant

25  Transfer Online issued five 500,000 share certificates of AppTech common stock to

26  Plaintiff Ottens (the "Ottens AppTech shares").  Each such certificate contained a single

27

28                                          5

1  legend, and no other, as follows:

2  "The securities represented by this certificate are subject to the terms and

3  conditions set forth in this LockUp/Leak Out Agreement and the Right of First

4  Refusal Agreement, copies of which may be obtained from the issuer or from

5  the holder of this security. No transfer of such securities will be made on the

6  books of the issuer unless accompanied by evidence of compliance with the

7  terms of such agreement."

8  22.    Between May 15, 2013 and the present time Plaintiff Ottens has sold 83,250

9  shares of his Merger Shares.  To date Plaintiff Farris has not sold any of her Merger

10  Shares.

11  **C.    Defendants' Interference with Plaintiffs' Rights in the Merger Shares**

12  23.    Plaintiffs are informed and believe and thereupon allege that on August 13,

13  2013, Defendant AppTech directed Defendant Transfer Online in writing to stop any future

14  transfer of the Merger Shares belonging to Plaintiff Farris.

15  23.    On or about February 6, 2014 attorneys for Defendant AppTech dispatched

16  a letter to Plaintiff Farris and Attorney Woodford demanding that she not deposit any of her

17  Merger Shares in a stock brokerage account or attempt to clear them free of restrictive

18  legends contending that the shares were not eligible for the benefits of Rule 144, Rules

19  and Regulations of the Securities Act of 1933, contrary to the conclusions reached in Mr.

20  Woodford's opinion letter given to Defendant Transfer Online.

21  24.    On April 15, 2014 Plaintiff Farris via her attorney filed a Complaint in U.S.

22  District Court, W.D. of Washington, Cause # 14-cv-5650 MJP against AppTech Corp. and

23  its officers, Luke D'Angelo and Steven Cox, alleging as to the Merger Shares breach of

24  contract, conversion and violations of Federal and State securities laws.  On October 31,

25  2014 the Court dismissed that case, without prejudice, for lack of federal jurisdiction.

26  25.    Plaintiffs are informed and believe, and thereupon allege, that on or about

27

28                                                    6

1   July 2, 2015 Defendant Transfer Online, at the direction of Defendants AppTech, D'Angelo

2   and Cox, without court order or judgment, canceled the Farris AppTech shares and the

3   remaining Ottens AppTech shares from the records of Defendant Transfer Online.

4        26.    Plaintiffs have made demand upon defendants to restore their canceled App

5   Tech shares to issued shares bearing an appropriate "Rule 144" legend. Defendants have

6   failed and refused to do so.

7   **FIRST CAUSE OF ACTION**

8   **(Conversion Against Defendants AppTech and Transfer)**

9        27.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 26

10   herein as if fully set forth.

11        28.    Pursuant to the Merger Agreement Plaintiff Farris has clear legal ownership

12   and right to possession of 2,500,000 shares of AppTech common stock.

13        29.    Pursuant to the Merger Agreement Plaintiff Ottens has clear legal ownership

14   and right to possession of 2,500,000 shares of AppTech common stock, less those sold

15   as set forth in Paragraph 22, above.

16        30.    Defendants and Transfer wrongfully misappropriated Plaintiffs' shares for

17   their own benefit and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

18        31.    As a proximate result of Defendants' acts of conversion, Plaintiffs have been

19   deprived of their property rights and suffered damages in excess of $3 million, in an

20   amount to be proved at trial.

21        32.    The aforementioned acts of Defendants were wilful, wanton, malicious, and

22   oppressive, were undertaken with the intent to defraud, and justify the awarding of

23   exemplary and punitive damages.

24   **SECOND CAUSE OF ACTION**

25   **(Aiding and Abetting Conversion Against Defendants D'Angelo and Cox)**

26        33.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 26 and

27

28   7

**COMPLAINT**

1  28 through 32 herein as if fully set forth.

2      34.    As set forth above Plaintiffs were parties to the Merger Agreement between

3  Defendant Apptech and Transcendent One.

4      35.    Plaintiffs are informed and believe, and thereupon allege, that from the date

5  that the Merger Agreement was executed to and through the date that it closed Defendants

6  D'Angelo and Cox were directors, officers and, together, controlling shareholders of

7  Transcendent One.

8      36.    By the terms of the Merger Agreement Defendant AppTech gave

9  Transcendent One unfettered access to AppTech's financial books and records as follows:

10         a.    ¶ 2.5(a), page 9 - "AppTech and Merger Co. shall allow for the

11  examination and inspection of the books and records of each of AppTech and Merger Co.

12  prior to the Closing Date and AppTech and Merger Co. shall deliver no later than the

13  Closing Date all customary schedules listing each of AppTech's and Merger Co.'s material

14  contracts, and real and personal property; pending, threatened and contemplated legal

15  proceedings; employees; assets and liabilities, including contingencies and commitments;

16  and other information reasonably requested;"

17         b.  ¶ 2.9, page 10 - "**Investigation of Financial Condition**. Without in any

18  manner reducing or otherwise mitigating the representations contained herein,

19  Transcendent its legal counsel and accountants shall have the opportunity to meet with

20  AppTech's accountants and attorneys to discuss the financial condition of AppTech during

21  reasonable business hours and in a manner that does not interfere with the normal

22  operation of AppTech's business. AppTech shall make available to Transcendent all books

23  and records of AppTech.

24         c.  ¶ 4.1, page 15 - **Investigative Rights**. "Prior to the Closing Date, each

25  Party shall provide to the other Parties, and such other Party's counsel, accountants,

26  auditors and other authorized representatives, full access during normal business hours

27

28                                          8

and upon reasonable advance written notice to all of each party's properties, books, contracts, commitments and records for the purpose of examining the same. Each Party shall furnish the other Parties with all information concerning each Party's affairs as the other Parties may reasonably request. If during the investigative period one Party learns that a representation of the other Party was not accurate, no such claim may be asserted by the Party so learning that a representation of the other party was not accurate."

37.     Prior to the Closing Date Defendant AppTech presented to Defendant Cox and to the attorneys for Transcendent One each and every item requested from AppTech during the investigative period pursuant to the terms of the Merger Agreement.  Had Transcendent not been satisfied with the material presented Transcendent had the power to terminate the Merger Agreement ... "If AppTech and/or Merger Co. breach any of its representations or warranties herein or fail to perform in any material respect any of its covenants, agreements or obligations under this Agreement." [Merger Agreement, ¶ 9.20(a)(3)]. Transcendent invoked no such right to terminate and the Agreement closed without incident.

38.     As is stated in the Merger Agreement at ¶ 8.4, page 18 and ¶ 9.12, page 19 the Agreement was prepared by counsel for Transcendent. AppTech was not represented by counsel.

39.     On the Closing Date of the Merger Agreement Transcendent One merged into Defendant AppTech, defendant D'Angelo became a director and CEO of AppTech, and Defendant Cox became a director and President of AppTech. {Merger Agreement ¶ 1.6(b) and (c), page 6].

40.     Upon becoming members of the AppTech board of directors Defendants D'Angelo and Cox issued to themselves and their associates millions of shares of AppTech common stock.

41.     Plaintiffs are informed and believe, and thereupon allege, that commencing

9

1  on or about August 13, 2013 and continuing thereafter, with full knowledge of the facts

2  alleged above and without a court order or judgment, Defendants D'Angelo and Cox, acting

3  through Defendants AppTech and Transfer, blocked transfer of the Plaintiffs' Merger

4  Shares.

5  42.    Plaintiffs are informed and believe, and thereupon allege, that on or about July 2,

6  2015, without a court order or judgment, Defendants D'Angelo and Cox, acting through

7  Defendants AppTech and Transfer, caused the Plaintiffs' Merger Shares to be cancelled.

8  43.    Defendants D'Angelo and Cox aided and abetted Defendants AppTech's and

9  Transfer's conversion of the Merger Shares giving substantial assistance and

10  encouragement therefor, including by continuing to support a factual narrative that is

11  inconsistent with determinations made in good faith by AppTech's board of directors and

12  Transcendent One's board of directors to cause Plaintiffs to release the debt owed them

13  in order that the merger might proceed.

14  44.    As a direct, proximate, and foreseeable result of the above-mentioned conduct of

15  Defendants D'Angelo and Cox, Plaintiffs have suffered actual and consequential damages

16  in an amount not yet fully ascertained but well in excess of the jurisdictional limits of this

17  Court.

18  45.    Defendants' conduct in committing the acts alleged herein was willful, malicious and

19  oppressive, and was done in conscious disregard of Plaintiffs' rights and therefore merits

20  an award of punitive damages.

21  **THIRD CAUSE OF ACTION**

22  **(Breach of Fiduciary Duty against Defendants D'Angelo and Cox)**

23  46.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 26, 28 through

24  32 and 34 through 45 herein as if fully set forth.

25  47.    AppTech is a corporation publically traded on the OTC Markets Pink Sheets level

26  bearing the symbol APCX.

27

28                                            10

48.     Defendants D'Angelo and Cox were at all times alleged herein the majority owner of AppTech common stock and controlled all aspects of AppTech..

49.     As majority shareholders in AppTech, Defendants D'Angelo and Cox owed a fiduciary duty to Plaintiff minority shareholders to act at all times with the utmost care, honesty, undivided loyalty and fidelity in all their business dealings with Plaintiffs.

50.     Defendants D'Angelo and Cox breached their fiduciary duties to Plaintiffs by the acts of misfeasance and malfeasance described herein, including but not limited to those acts of self-dealing that were designed to deprive Plaintiffs of their ownership rights in AppTech and to enhance the value and tradeability of Defendants' AppTech stock in so doing.

51.     As a proximate result of Defendants D'Angelo's and Cox's breach of fiduciary duty, Plaintiffs have been harmed as alleged herein in an amount in excess of $3 million, in an amount to be proved at trial.

52.     Defendants' conduct in committing the acts alleged herein was willful, malicious and oppressive, and was done in conscious disregard of Plaintiffs' rights and therefore merits an award of punitive damages.

### FOURTH CAUSE OF ACTION

### (Breach of Contract Against Defendant AppTech)

53.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 22 herein as if fully set forth.

54.     As set forth above, AppTech has breached its contractual and common law allegations to Plaintiffs by failing to secure a PCAOB audit of its financial records and by failing to file US Securities and Exchange Commission a Form S-1 Registration Statement within the specified time frame, or at all.

55.     As a direct and proximate cause of AppTech's breach of its obligations to secure a PCAOB audit of its financial records and to file a US Securities and Exchange Commission Form S-1 Registration Statement, AppTech has deprived Plaintiffs of the ability to sell the

11

1  Merger Shares in the public market via the Rule 144 exemption.  Plaintiffs have heretofore
2  requested that AppTech fulfill its obligations under Paragraph 1.7 of the Merger Agreement
3  but AppTech has failed and refused to do so.  AppTech's actions and inactions have
4  caused irreparable harm, for which there is no immediate monetary relief available.

5  56.    In addition, as a result of AppTech's actions and inactions, Plaintiffs have suffered
6  injuries and sustained actual and consequential damages in an amount according to proof
7  at trial.

8                                  **FIFTH CAUSE OF ACTION**

9              **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

10                               **(Against Defendant AppTech)**

11  57.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 26 and 43
12  herein as if fully set forth.

13  58.    As set forth above, AppTech has breached the implied covenant of good faith and
14  fair dealing by disputing the validity of Plaintiff Ottens' Convertible Note and unilaterally
15  cancelling the Merger Shares without benefit of a court order or judgment while failing to
16  seek rescission of the Merger Agreement.  In so doing AppTech has interfered with
17  Plaintiffs' ability to sell the Merger Shares and deprived Plaintiffs of the benefit of their
18  bargain.

19  59.    As a result of AppTech's actions and inactions, Plaintiffs have suffered injuries and
20  sustained actual and consequential damages in an amount according to proof at trial.

21                                  **SIXTH CAUSE OF ACTION**

22                          **(Declaratory Relief Against All Defendants)**

23  60.    An actual controversy has arisen and now exists between Plaintiffs and Defendants
24  concerning their respective rights and duties, in that Plaintiffs contend as follows: (a) that
25  they are the owners of 4,916,750 shares of the common stock of AppTech Corp., a
26  Wyoming corporation, trading on the OTC Markets Pink Sheets under the symbol APCX;

27

28                                              12

---

                                          COMPLAINT

(b) that Plaintiffs' shares of AppTech stock were validly issued per the terms of an Agreement and Plan of Merger between Defendant AppTech, Inc., a Nevada corporation and Transcendent One Inc., a Nevada corporation dated March 15, 2013, as amended on April 30, 2013; (c) that Defendants have wrongfully blocked transfer of Plaintiffs' shares of AppTech stock; (d) that Defendants have wrongfully cancelled Plaintiffs' shares of AppTech stock; and that Defendant AppTech must prepare and file a US Securities and Exchange Commission Form S-1 Registration Statement or, in the alternative, must acknowledge that Plaintiffs' AppTech shares are exempt from the registration requirements of Section 5 of the Securities Act of 1933 by reason of the operation of section 4(a)(2) of said Act. Defendants dispute these contentions and contend that Plaintiffs have no ownership interest in AppTech, and that the actions taken by defendants vis-a-vis Plaintiffs' shares of AppTech stock were appropriate exercises of their powers as directors, officers and transfer agent of Defendant AppTech.

61.     Plaintiffs desire a judicial determination of their rights and duties, a declaration as to their ownership rights in AppTech and rights to reinstatement of their AppTech shares in the books and records of Defendant Transfer and the cancellation of any stop trade order in effect as to those shares.

62.     Plaintiffs further desire a judicial declaration that their AppTech shares are free-trading pursuant to the exemption provided in section 4(a)(2) of the Securities Act of 1933.

63.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties as shareholders of AppTech. The unsettled state of affairs regarding the ownership structure of AppTech has deprived Plaintiffs of the right to participate in the affairs and management of AppTech, has wrongfully deprived them of their ownership interest, and has resulted in their oppression as minority shareholders.

64.     Defendants' actions alleged herein have deprived Plaintiffs of AppTech shares worth

13

in excess of $3,000,000, plus an additional unknown amount in distributions to which Plaintiffs were and are entitled by virtue of there ownership interest in AppTech.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    **FIRST CAUSE OF ACTION (Conversion)**

    1.    For return of the shares owned by Plaintiffs free of any stop trade order;

    2.    Alternatively, for compensatory damages, in the amount in excess of $3,000,000 to be proved at trial;;

    3.    For prejudgment interest at the highest legal rate from the date of the conversion and

    4.    For an award of punitive damages.

B.    **SECOND CAUSE OF ACTION (Aiding and Abetting Conversion)**

    1.    For compensatory damages, in the amount in excess $3,000,000 to be proved at trial;

    2.    For prejudgment interest at the highest legal rate from the date of the conversion; and

    3.    For an award of punitive damages.

C.    **THIRD CAUSE OF ACTION (Breach of Fiduciary Duty)**

    1.    For compensatory damages, in the amount in excess of $3,000,000 to be proved at trial;

    2.    For prejudgment interest at the highest legal rate from the date of the breach of fiduciary duty; and

14

COMPLAINT

3.     For an award of punitive damages.

D.   **FOURTH CAUSE OF ACTION (Breach of Contract)**

    1.     For compensatory damages, in the amount in excess of $3,000,000 to be proved at trial; and

    2.     For prejudgment interest at the highest legal rate from the date of the breach of contract.

E.   **FIFTH CAUSE OF ACTION (Breach of Implied Covenant of Good Faith and Fair Dealing)**

    1.     For compensatory damages, in the amount in excess of $3,000,000 to be proved at trial; and

    2.     For prejudgment interest at the highest legal rate from the date of the breach of the implied covenant.

F.   **SIXTH CAUSE OF ACTION (Declaratory Relief)**

    1.     For a declaration that Plaintiff Laura Farris owns 2,500,000 shares of AppTech Common Stock;

    2.     For a declaration that Plaintiff Eric Ottens owns 416,750 shares of AppTech Common Stock;

    3.     For a declaration that Plaintiffs' shares of AppTech Common Stock be reinstated on the books of Defendant Transfer Online, Inc. free of any stop trade order.

    4.     For a declaration that Plaintiffs' shares of AppTech Connon Stock are free-trading pursuant to the exemption provided in section 4(a)(2) of the Securities Act of 1933.

15

G.   **ON ALL CAUSES OF ACTION**

    1.    For costs of suit incurred;

    2.    For attorney fees, as allowed by law or contract; and

    3.    For such other and further relief as the Court may deem proper.

Dated: November 17, 2017          **LAW OFFICES OF ROBERT J. HUSTON III**

By: _____
        Robert J. Huston III, Attorney for Plaintiffs
        LAURA FARRIS and ERIC OTTENS

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Dated: November 17, 2017          LAW OFFICES OF ROBERT J. HUSTON III

By: _____
        Robert J. Huston III, Attorney for Plaintiffs
        LAURA FARRIS and ERIC OTTENS

16

COMPLAINT

EXHIBIT "A"

17

COMPLAINT